```
TS-812(GV)
1185529/01(LL)
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF PUERTO RICO


ARIEL QUIñONES                 *
                               *
Plaintiff                      *
                               *       CIVIL NO:11-cv-02132-GAG
vs.                            *
                               *
ENCANTORESTAURANTS,INC.        *
                               *
ET AL                          *
                               *
Defendants                     *
*     *     *     *     *     *     *
```

**JOINT INITIAL SCHEDULING CONFERENCE MEMORANDUM**

TO THE HONORABLE COURT:

NOW COME plaintiff, Mr. Ariel Quiñones and defendant Encanto Restaurants, Inc., through their respective attorneys, and very respectfully state as follows:

## I. EACH PARTY'S THEORY OF THE CASE

### A. PLAINTIFF

Plaintiff Ariel Quiñones is of legal age, single, and a resident of Isabela, PR. On the other hand, defendant Encanto Restaurants, Inc. ("Encanto") is a corporation organized under the laws of the Cayman Islands, with its principal place of business in a state other than the Commonwealth of Puerto Rico, who operates a number of Taco Bell and Pizza Hut restaurants in Puerto Rico, including a store at Road #2 in Barceloneta, PR.

On November 24, 2010, at about 12:30 p.m., Mr. Quiñones visited the Taco Bell

and Pizza Hut store located at Road #2, in Barceloneta, PR.  After having lunch at Taco Bell, plaintiff proceeded to exit the store at about 1:10 p.m., through the store's exit.  While standing at the exit of the store while he made a phone call, the outside sign of the Pizza Hut Store detached from the store's wall and fell to the ground hitting Mr. Quiñones on the head causing him to drop to his knees.  Immediately after the hit, plaintiff began to bleed profusely from his forehead and became dizzy and nauseous.

As a result of the strong pain that Mr. Quiñones began to feel on his head, the store manager had to call the emergency medical services, which took Mr. Quiñones to Atlantic Medical Center in Barceloneta, PR., where he received emergency medical care and stitches in his forehead were taken.  Notwithstanding the amount of medical treatment received, Mr. Quiñones has remained with a permanent scar in his face and continues to suffer from headaches and nausea.

As a result of the negligent acts and/or omissions of the Defendants, Mr. Quiñones suffered damages throughout his body, but particularly to his forehead where he suffered a cut, which required stitches.  As a result, Mr. Quiñones has permanent, irreversible scarring in a cosmetically relevant anatomical region of his face.  This injury has had social and psychological repercussions to Mr. Quiñones.

As a result of the injuries caused by the negligent acts and/or omissions of the Defendants, plaintiff Mr. Quiñones continues to suffer pain, headaches, nausea, and vision problems, which significantly impairs his activities of daily living.

As a result of the injuries caused by the negligent acts and/or omissions of the Defendants, Ms. Quiñones has suffered, and will continue to suffer, severe physical

pain and excruciating mental anguish, valued in the sum of $500,000.00.

The injuries suffered by Mr. Quiñones on November 24, 2010, were proximately caused by the defendants' negligence, who at the time of the occurrence of the facts alleged herein failed to maintain the premises of the Pizza Hut store in Barceloneta in a reasonably safe condition for the use of its customers and visitors by allowing faulty installed outside signage on the store.

The injuries suffered by Mr. Quiñones on November 24, 2011, were proximately caused by the defendants' negligence, who at the time of the occurrence of the facts created, maintained and tolerated a safety hazard within the premises of the Pizza Hut and Taco Bell store located in Road #2, Barceloneta, PR., detrimental to the well-being of the store's visitors and patrons.

The injuries suffered by Mr. Quiñones on November 24, 2011, were proximately caused by the defendants' negligence, who failed to warn or otherwise alert the store's visitors and customers about the dangerous conditions existing within the premises of the Pizza Hut and Taco Bell store located in Road #2, Barceloneta, PR.

**B. DEFENDANT**

In this case there is no Federal Jurisdiction because the amount in controversy does not exceed 75 thousand dollars. We have requested but have not been provided with the necessary evidence to establish that Encanto Restaurant principal place of business is Puerto Rico. If the evidence is produced, there will

be no Federal Jurisdiction for lack of diversity citizenship even though the place of incorporation is the Cayman Islands.

If there were Federal Jurisdiction, the liable party would be Multi Plastics, Inc. who was the entity that built and installed the sign.

That in the alternative, the sign fell due to unforeseen circumstances which were not the responsibility of Encanto Restaurants and therefore there is no liability on its part.

## I. APPLICABLE LAW

**A. PLAINTIFF**

The instant is a tort action arising under the provisions of Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141, which provides as follows:

> A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

In other words, "Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. Â§ 5141, 'imposes liability on any person or entity who by an act or omission causes damage to another through fault or negligence.'" <u>Kaden v. Wyndham El Conquistador Resort & Country Club</u>, 2005.DPR.0000124 <http://www.versuslaw.com> (DPR 2005), citing De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998). In this regard, "[n]egligence is defined as the failure to exercise due diligence to avoid foreseeable risks", and "'[l]iability will only arise if the damages complained of were reasonably foreseeable to the defendant.'" <u>Kaden</u>, supra, citing <u>De-</u>

Jesus-Adorno, 160 F.3d at 824.  While "[t]he foreseeability contemplated by the statute does not include every conceivable consequence of an act or omission, since to do so would make the defendant an absolute insurer." Bou Maldonado v. K-mart Corp., No. 97-1268, 2001 WL 1636768, *2 (D.P.R. Oct. 18, 2001).  In this regard, "[t]o establish the foreseeable character of an event, the evidence must be such that the fact finder can rationally conclude that the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances." Id.  It is noteworthy to point out that "[f]oreseeability is usually a jury question because it is an evaluative application of legal standards to facts, where there might be reasonable difference of opinion."   Kaden, supra, citing Marshall v. Perez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987).

In order to prove an action under Article 1802, the claimant "must establish (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." De-Jesus-Adorno, 160 F.3d at 824 (quoting Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 50 (1st Cir. 1997)).  As such, "[a] legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." De-Jesus-Adorno, 160 F.3d at 824.

In the specific instance of slip and fall cases in commercial establishments, such as the facts at issue herein, the case law is specific and quite prolific.  Generally

speaking, "[i]n Puerto Rico, an owner of a commercial establishment is potentially liable for all injuries occurring in areas where it has retained control." Bou Maldonado, 2001 WL 1636768, at *3 (citing Cotto v. C.M. Insurance Co., 116 D.P.R. 644 (1985).  As such, an "enterprise which maintains a public place for purpose of transacting business for its own benefit, is bound to maintain it in such a safe condition that one who is induced to enter the premises will not suffer any damage." Bou Maldonado, 2001 WL 1636768, at *3 (citing Soc. Gananciales v. González Padín Co., Inc., 117 D.P.R. 94 (1986)).  As more aptly stated by this Honorable Court in Kaden, "[t]his duty of care requires that commercial establishments 'take the necessary precautions or . . . adopt the necessary security measures to preserve the safety of their costumers.'" Kaden, supra, citing Bou Maldonado, 2001 WL 1636768, at *3.  "In sum, plaintiffs must prove that the injury was reasonably foreseeable and that it could have been avoided had defendant acted with care."  Kaden, supra, citing Woods-Leber, 124 F.3d at 51.

In sum, "liability is only imposed in situations that involve risky conditions inside the business premises that the owner knew or should have known existed. In other words, a plaintiff must prove that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the damage." Torres v. Kmart Corporation, 223 F.Supp.2d 273 (DPR 2006).

**B.  DEFENDANT**

This action is brought to this Court alleging diversity jurisdiction, pursuant to 28 U.S.C.   1332, which states:

6

> *(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—*
>
> *(1) citizens of different States;*
>
>> *(2) citizens of a State and citizens or subjects of a foreign state;*
>>
>> *(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and*
>>
>> *4) a foreign state, defined in section 1603*
>>
>>> *(a) [../uscode28/usc_sec_28_00001603----000-.html../uscode28/usc_sec_28_00001603----000-.html](../uscode28/usc_sec_28_00001603----000-.html)of this title, as plaintiff and citizens*
>>>
>>> *of a State or of different States. (...)*
>>>
>>> *(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.*

Subject matter jurisdiction is the legal authority of a court to hear and decide a particular type of case. Federal courts have limited subject matter jurisdiction. A person seeking to invoke federal jurisdiction has the burden of proof to demonstrate that the federal court has the authority to hear the case. **McNutt v. General Motors Acceptance Corp.**, 298 U.S. 178

(1936).

Article III of the Constitution of the United States of America authorizes federal court jurisdiction for suits between citizens of different states. The statute authorizing such diversity jurisdiction is 28 U.S.C. 1332, *supra.*

In order for diversity jurisdiction to exist, there must be complete diversity; that is, no plaintiff can be a citizen of the same state as any of the defendants. **_Strawbridge v. Curtiss,_** 7 U.S. (3 Cranch) 267 (1806); **_Mas v. Perry_**, 489 F.2d 1396 (1974). The complete diversity rule does not prevent co-plaintiffs (or co-defendants) from being from the same state; rather, it requires that all of the plaintiffs be from different states than all of the defendants. Diversity is determined at the time the action is filed.

Also, for diversity jurisdiction to exist, each party must be a citizen of a state or a citizen only of a foreign country. In order for a person to be a citizen of a state, he or she must be a United States citizen. The validity of extending jurisdiction to a suit between a citizen of a state and a citizen of the Commonwealth of Puerto Rico was upheld, on the authority of **_National Mutual Insurance v. Tidewater Transfer Co._**, 337 U.S. 582 (1949), and in **_Americana of Puerto Rico, Inc. v. Kaplus_**, 368 F. 2d 431 (3d Cir. 1966).

For purposes of establishing domicile for diversity jurisdiction, there must be physical presence in the state and an intent to make such state a home. **_Rodríguez Diaz v. Sierra Martínez_**, 853 F.2d 1027 (1988). An individual is deemed to be a citizen of the state where he or she is "domiciled"; that is, the one place where he has his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. " *Erwin Chemerinsky,* Federal Jurisdiction, 4th ed. 2003,  5.3, at 297 (citing Charles Alan Wright, Law of Federal Courts (5th ed. 1994), at 146); **_Mas v. Perry_**, 489 F. 2d 1396, 1399 (1974); **_Palermo v. Abrams_**, 62 F. Supp. 2d 408 (1999); **_Alicea Rivera v. SIMED_**, 12 F. Supp. 2d 243 (D.C. PR, 1998). To constitute "domicile", there must be both the fact of a fixed habitation or abode in a particular place and an intention to remain there permanently or indefinitely (*animus manendi*). **_Kidd v. Hilton of San Juan, Inc._**, 251 F. Supp. 465 (D.C. PR, 1966). Even when a person is maintaining a new residence of indefinite duration, he may not be held to have changed domicile when he is away from the former home for a limited purpose, like for example, to obtain medical care or to pursue employment. **_Tanzymore v. Bethlehem Steel Corp._**, 325 F. Supp. 891 (1971); **_Vitro v. Town of Carmel_**, 433 F. Supp. 1110 (1977).

A person is held to be a citizen of the place where he or she is domiciled. *Rodríguez v. Sierra Martínez*, 853 F. 2d 1027 (1st. Cir. 1988). Although a person may have many residences, he can only have one domicile. *Steigleder v. McQuesten*, 198 U.S. 141 (1905). An individual is considered to be a citizen of only one state for purposes of determining diversity jurisdiction. *Williamson v. Osenton*, 232 U.S. 619 (1914). Therefore, the question of domicile is one of intent: Where does the person intend to make his or her permanent home? Relevant evidence of intent might include the current residence; place of employment; home ownership; voting or automobile registration; location of personal or real property, including location of bank accounts; location of household furnishings; driver's licensing; and membership in churches or other associations. Chemerinsky, *supra*; *Simmons v. Skyway of Ocala*, 592 F. Supp. 356 (1982); *Alicea Rivera v. SIMED*, 12 F. Supp. 2d 243 (D.C. PR, 1998). When the domicile of a party is in doubt, its determination requires an evaluation of all the circumstances of the case. But no single factor is conclusive. *Delgado Ortiz v. Irelan*, 830 F. Supp. 68, 70 (D.C. PR 1993).

Mere residence in a state is not enough for purposes of diversity. *Michelson v. Exxon Research and Engineering Co.*, 578 F. Supp. 289 (1984). Two elements are necessary to establish domicile: physical presence in the claimed domicile, and an

intent to remain there indefinitely. ***Sun Printing & Publishing v. Edwards***, 194 U.S. 377 (1903). For diversity of jurisdiction purposes, where there is evidence indicating that a party has more than one residence, or residence is unclear, court should focus on the intent of the party. To ascertain intent, court must examine entire course of person's conduct in order to draw necessary inferences as to relevant intent. ***National Artists Management Co., Inc. v. Weaving***, 769 F. Supp. 1224 (1991). Statements of party's intent are accorded minimal weight measured against objective factors of party's domicile. ***Alicea Rivera v. SIMED***, 12 F. Supp. 2d 243 (D.C. PR, 1998).

A person may have only one domicile at a time. Until a new one is acquired, the established one continues; and once acquired, presumption is that it continues until changed. ***Hawes v. Club Ecuestre El Comandante***, 598 F. 2d 698 (1979). When plaintiff's domicile changes only during the period surrounding filing of complaint, a court not only must weigh the quantity and quality of ties to new domicile but also the bridges to the former domicile that still remain. ***León v. Caribbean Hosp. Corp.***, 848 F. Supp. 317 (D.C. PR, 1994).

The burden of pleading diverse citizenship is upon the party invoking federal diversity jurisdiction. ***Cameron v. Hodges***, 127 U.S. 322 (1888); ***Mas v. Perry***, 489 F. 2d 1396, 1399. If

11

diversity jurisdiction is properly challenged, that party also bears the burden of proof. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936); *Mas v. Perry*, 489 F. 2d 1396 (1974); *Alicea Rivera v. SIMED*, 12 F. Supp. 2d 243 (D.C. PR, 1998). That party has the burden of providing proof of the change in domicile by clear and convincing evidence. *Alicea Rivera v. SIMED*, 12 F. Supp. 2d 243, 245 (D.C. PR, 1998); *Katz v. Goodyear Tire & Rubber Co.*, 737 F. 2d 238, 243 (2d. Cir. 1984).

Puerto Rico, like other common law jurisdictions, recognizes that foresee ability is the touchstone of extra contractual liability. Rivera vs. Cruz, 87 JTS 51 (1987). Foreseeable events are those that may be calculated by a prudent conduct alert to eventualities that may be expected in the course of life. Jiménez, supra, at 888. In Marshall vs. Perez Arzuaga, 828 F.2d 845 (1st Cir. 1987), the Court defined proximate cause in terms of foresee ability. An individual is thus liable for injuries that a prudent person reasonably could anticipate. Foresee ability does not require that the precise risk or exact harm which occurred should have been foreseen and/or anticipated. The essential factor is that the individual should have foreseen consequences of the kind that in fact occurred. Gines vs. Puerto Rico Acqueduct & Sewer Auth., 93 P.R.R. 168, 178 (1966). It is thus apparent that in a negligence action, foresee ability is the cornerstone both for determining the duty of a given individual

and for determining his liability for breach of that duty.

When deciding whether a negligent act was a substantial factor in bringing about an injury, courts must resolve both whether the negligence in fact caused the injury and whether the injury was reasonably foreseeable.  By virtue of its definition, causation in fact entails a factual inquiry which requires a court to determine if an injury would not have occurred but for a defendants negligence, or, in the alternative, where there are two or more causes, each of which by itself is sufficient to bring about an injury, whether a given defendant's conduct was a substantial factor in producing said injury.  <u>RESTATEMENT (SECOND) OF TORTS,</u> Section 432. It has been held that an injury is reasonably foreseeable where a defendant's negligent conduct creates a risk that might reasonably be expected to result in such injury or damage, even though the exact nature of the injury or damage need not, itself, be foreseeable.  <u>Fowler vs. Boise Cascade Corp.</u>, 948 F. 2d 49, 53  (1st Cir.  1991).

Duty has been defined as an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person. The duty referred to in the definition of negligence is a legal duty.  This is so because negligence is not a tort unless it results in the commission of a wrong, and said commission imports the breach of a duty and a corresponding infringement of the

13

right to be protected in person or in property. <u>Jiménez vs. Pelegrina Espinet</u>, 112 D.P.R. 700 (1982). Negligence necessarily presupposes the violation of an existing legal duty or the unintentional invasion of a protected interest and an injury, which results as a foreseeable, direct and/or natural consequence from the breach of the duty.

The existence of a duty to use due care may be predicated upon a relation between the parties, and its extent depends in the last analysis on the circumstances of each case. The determination of any question of duty, namely, whether the defendant stands in such relation to the plaintiff that the law will impose upon him an obligation of reasonable conduct for the benefit of the plaintiff, has been held to be an issue of law to be resolved by the court.

### III Jurisdictional issues

**A. PLAINTIFF**

None.

**B. DEFENDANT**

See previous discussion.

### IV. CONSENT TO PROCEED BEFORE A

**U.S. MAGISTRATE JUDGE**

### A.  PLAINTIFF

Plaintiff consents to proceed before a U.S. Magistrate Judge.

### B.  DEFENDANT

At this time the appearing party does not consent to proceed before a Magistrate Judge.

## V.  DISCLOSURES

### A.  PLAINTIFF

Plaintiff will serve his disclosures by Friday, March 2, 2012.

### B.  DEFENDANT

It certifies that it has complied with the initial disclosure requirements of Fed. R. Civ. P. 26(a)(1).

## VI. ELECTRONIC ISSUES

### A.  PLAINTIFF

None contemplated.

### B.  DEFENDANT

Certifies that there are no electronic discovery issues to

address.

## VII.  DISCOVERY TIMETABLE

1.  Written discovery to be exchanged within 10 days and responded within 45 days thereafter.

2.  Depositions to be taken soon after the expiration the aforementioned 55 days.

## VIII. RELATAED CASES

None.

## IX. OTHER MATTERS

**A.  PLAINTIFF**

None.

**B.  DEFENDANT**

If during the next 10 days we are not provided with the necessary evidence to establish that there is no diversity of citizenship, we will be requesting the Court for leave to file a third party complaint.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 1st day of March, 2012.

**s/ Richard Schell-Asad**
Richard Schell-Asad - Bar No. 203207

16

Attorney for Plaintiff
Troncoso & Schell
254 San José St.
El Mundo Bldg., Third Floor
San Juan, PR 00901
Tel: (787) 722-0741
Fax: (787) 724-2563
e-mail: rschellasad@aol.com

```
BUFETE GONZALEZ VILLAMIL
GONZALEZ PANDO PLAZA
1181 AVE. JESUS T. PIÑERO
SAN JUAN, PR  00920-5604
TELS. 792-5200; 273-8223
FAX 273-8250
E-MAIL:jose@gonzalezvillamil.com


s/Jose A. González Villamil
JOSE A. GONZALEZ VILLAMIL
USDCN  127105
```